hmg.3.22.25



**U.S. Department of Justice**

*United States Attorney
District of Maryland
Northern Division*

---

*Adeyemi Adenrele
Assistant United States Attorney
Adeyemi.Adenrele@usdoj.gov*

*Mailing Address:
36 S. Charles Street, 4th Floor
Baltimore, MD 21201*

*Office Location:
36 S. Charles Street, 4th Floor
Baltimore, MD 21201*

DIRECT: 410-209-4819
MAIN: 410-209-4800

September 24, 2025

FILED ____ ENTERED
LOGGED ____ RECEIVED

OCT 17 2025

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

David Walsh-Little, Esquire
111 S. Calvert Street, Suite 2805
Baltimore, MD 21202

    Re:    <u>United States v. Lawrence Smith</u>,
           Criminal No. SAG-23-312

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Lawrence Smith (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by September 25, 2025, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

    1.    The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343, and Count Twelve of the Indictment which charges Income Tax Evasion, in violation of 26 U.S.C. § 7201. The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offenses

    2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

**Count 1- Wire Fraud:**

    1.    That there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the indictment;

    2.    That the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud

Rev. August 2018

(if applicable: or that he knowingly and intentionally aided and abetted others in the scheme); and

3. That in execution of that scheme, the defendant used or caused the use of interstate wires as specified in the indictment:

**Count 12- Income Tax Evasion**

1. First, that the defendant owed (substantially) more federal income tax for the calendar year 2017.

2. Second, that the defendant committed the affirmative act constituting tax evasion described in the indictment.

3. Third, that the defendant acted willfully.

<u>Penalties</u>

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1346 | 0 | 20yrs | 3yrs | $1,000,000 | $100 |
| 12 | 26 U.S.C. § 7201 | 0 | 5 yrs | 3yrs | $100,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court shall order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

Rev. August 2018

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

  e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

Rev. August 2018

      a.      This Office and the Defendant further agree that the applicable base offense level for Counts One is 7 pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2B1.1(a).

      b.      This Office and the Defendant further agree that there is a 10-level increase because the loss amount is more than $150,000. U.S.S.G. §2B1.1(b)(1)(F).

      c.      This Office and the Defendant further agree that there is a 2-level increase because the Defendant abused a position of public trust. U.S.S.G. §3B1.3.

      d.      This Office and the Defendant further agree that the applicable base offense level for Count Twelve is 14, to account for a tax loss of more than $40,000. §2T4.1.

      e.      This Office and the Defendant further agree that because Counts One and Twelve group because the offense level is determined largely on the basis of the total amount of loss. U.S.S.G. § 3D1.2(d). Accordingly, the adjusted offense level is 19.

      f.      This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level decrease** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. Accordingly, **the adjusted offense level is 16**.

      7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

### Obligations of the Parties

      8.      At the time of sentencing, this Office will recommend a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

Rev. August 2018

9. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

        ii. This Office reserves the right to appeal any sentence below a statutory minimum.

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

11. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence on Count One, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, specifically: A money judgment of not less than **$200,000.00**.

13. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution and Civil Tax Assessment

16. The Defendant agrees to pay restitution to the Internal Revenue Service ("IRS") in the total amount of **$61,233.40**, pursuant to 18 U.S.C. § 3663(a)(3), in connection with Count Twelve. The Defendant agrees that the total amount of restitution reflected in this Agreement results from the Defendant's fraudulent conduct, including relevant conduct. The Defendant further agrees as follows:

    a. The Defendant agrees to pay Title 26 interest on the restitution amount; interest runs from the last date prescribed for payment of the relevant tax through the date of sentencing. The Government will provide an updated interest figure at sentencing.

    b. The Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). The Defendant does not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

    c. The Defendant is entitled to receive credit for restitution paid pursuant to this Agreement against those assessed civil tax liabilities due and owing for the same periods for

Rev. August 2018

which restitution was ordered. The Defendant understands and agrees that the Agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from the Defendant relating to the conduct covered by this Agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise the Defendant's obligation to pay any remaining civil tax liability. The Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

    d.  The Defendant understands that he is not entitled to receive credit with the IRS for any payment until the payment is received by the IRS. If full payment cannot be made immediately, the Defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. The Defendant also agrees to provide the above-described information to the Probation Office.

    e.  If the Defendant makes a payment of the restitution agreed to above prior to sentencing, the payment will be applied as a credit against the restitution ordered by the Court.

    f.  The Defendant agrees to send all payments made pursuant to the Court's restitution order to the Clerk of the Court at the following address:

> Clerk of the Court, District of Maryland
> Attn: Fourth Floor, Clerk's Office
> 101 W. Lombard St.
> Baltimore, MD 21201

    g.  With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the Defendant will provide the following information:

      i.  The Defendant's name and Social Security Number;

      ii.  The District Court and the docket number assigned to the case;

      iii.  Tax year(s) or period(s) for which restitution has been ordered; and

      iv.  A statement that the payment is being submitted pursuant to the District Court's restitution order.

    h.  The Defendant agrees to include a request that the Clerk of Court send the information, along with the Defendant's payments, to the IRS at the address listed below:

> IRS – RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

Rev. August 2018

i.  The Defendant also agrees to send a notice of any payments made pursuant to this Agreement, including the information listed in the previous paragraph, to the IRS at the following address:

> IRS – RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

## Defendant's Conduct Prior to Sentencing and Breach

17.  Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18.  If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

19.  The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding

prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

Adeyemi Adenrele
Jared M. Beim
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/17/25
Date

Lawrence Smith

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

10/17/25
Date

David Walsh-Little
Attorney for the Defendant

Rev. August 2018

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### Introduction

From May 2005 until August of 2022, Lawrence Smith (Smith) was employed as a Baltimore City School Police Officer. As a School Police Officer, he was an employee of the Baltimore City. The Baltimore City has authorized overtime pay for School Police Officers under the following circumstances:

1. Providing overtime work for Baltimore City Schools (*e.g.*, traditional patrol for the schools and other school activities such as sporting events and board meetings);

2. Providing security at professional sporting events (*e.g.*, Ravens and Orioles games);

3. Providing security at other Baltimore City community events and functions (*e.g.*, the Baltimore Running Festival, health clinics, festivals, concerts, election polling centers, conventions, and parades); and

4. Providing security at Baltimore City Recreation and Parks pools.

During the COVID-19 pandemic, Smith also was authorized to receive overtime pay to provide security for COVID-19 testing and food sites set up at various Baltimore City Public School System schools and Baltimore City Recreation and Parks community centers when they were open to the public. Smith was also authorized to receive overtime pay to provide security at a makeshift COVID-19 "hospital" set up at the Lord Baltimore Hotel in Baltimore City.

Additionally, Smith acted as a liaison with the Baltimore Police Department ("BPD"). He was authorized to assist the BPD in its investigations and also authorized to receive overtime pay if he received a BPD request outside of his regular hours for "emergencies" and situations that required an immediate response.

### Wire Fraud

The parties stipulate and agree that Smith's overtime slips from January 6, 2019 to August 30, 2022, claimed a total of approximately 4,850 hours of overtime, totaling approximately $253,719 in overtime earnings. Of that amount, Smith claimed more than 3,330 hours of fraudulent overtime, totaling at least $200,000 in fraudulent overtime earnings.

Among his fraudulent submissions, was Smith's submission of an overtime slip dated Tuesday, October 22, 2019, from 4:00-6:30 p.m. for the "Unified Tennis Championships and Awards Ceremony." His historical cell site data shows that he was in the vicinity of Dunbar High School ("Dunbar") at 1400 Orleans Street, Baltimore, MD 21231 and then his residence, at 9135 Panorama Drive, Perry Hall, MD, during his overtime shift. According to information obtained from Maryland Special Olympics, the Unified Tennis Championships were held at Loyola University on November 5-6, 2019. There was no event held in October 2019, and Dunbar did not have a tennis team at the 2019 Southern Maryland Interscholastic Unified Sports Tennis Tournament. Maryland Special Olympics further confirmed that Smith was not there in any official capacity related to the 2019 event. Smith did not, in fact, work overtime at the Special Olympics tennis tournament and he fraudulently claimed the overtime. On November 1, 2019, a direct deposit of $1,683.39 was made to Smith's Bank of America account, which was, in part, based on Smith's false and fraudulent representations regarding his work as a School Police Officer. This resulted in an interstate wire communication from Virginia to Maryland.

From January 6 to December 31, 2019, Smith claimed a total of approximately 384 hours of overtime, totaling approximately $19,828 in overtime earnings. Of that amount, he claimed approximately 245 hours of fraudulent overtime, totaling approximately $12,437 in fraudulent overtime earnings. On 52 occasions in which Smith claimed that he was working various physical security overtime details during this span of time, Smith's historical cell site data placed him in the vicinity of Dunbar and/or in the vicinity of his residence. Smith did not work the overtime shifts that he claimed because he was in Baltimore County for the entirety or majority of his overtime shifts on these 52 dates.

From January 3 to December 31, 2020, Smith claimed a total of approximately 1,758 hours of overtime, totaling approximately $90,709 in overtime earnings. Of that amount, he claimed approximately 1,479 hours of fraudulent overtime, totaling approximately $78,032 in fraudulent overtime earnings. From January 21 to December 30, 2020, Smith's historical cell site data showed that he was not in the vicinity of his overtime shift assignment location, 200 E. North Avenue, Baltimore, MD 21202, on approximately 270 occasions. Each of these shift assignments required Smith to be physically present. Instead, Smith was primarily in the vicinity of Dunbar or the vicinity of his residence during these assignments. Specifically, beginning in March 2020 when the pandemic began, Smith claimed that he worked overtime almost exclusively at COVID-19 meal sites, testing sites, and the Lord Baltimore Hotel. For nearly all of the instances in which Smith claimed that he worked overtime at COVID-19 sites in 2020, Smith's historical cell site data shows that he was in the vicinity of his residence in Baltimore County—approximately 19 miles from the Lord Baltimore Hotel.

From January 1 to December 30, 2021, Smith claimed a total of approximately 1,624 hours of overtime, totaling approximately $85,243 in overtime earnings. Of that amount, there were 1,398 hours of fraudulent overtime, totaling approximately $72,068 in fraudulent overtime earnings. From January 1 to December August 31, 2021, Smith submitted approximately 162 overtime slips for a security detail at the Lord Baltimore Hotel, accounting for approximately 1,044 hours of overtime and approximately $51,411.78 of his overtime earnings. Of that amount, he fraudulently claimed overtime on every occasion. Smith routinely claimed that he worked overtime at the Lord Baltimore Hotel from 4:00-8:00 p.m. or 4:00 p.m.-12:00 a.m. For nearly all

of the instances in which Smith claimed that he worked overtime at COVID-19 sites in 2021, Smith's historical cell site data routinely showed that he was not near the Lord Baltimore Hotel. Often he was at his residence in Baltimore County and/or doing recreational activities such as being on his boat in the Baltimore Inner Harbor area.

From January 1 to August 30, 2022, Smith claimed a total of approximately 1,079 hours of overtime, totaling approximately $56,976 in overtime earnings. Of that amount, he claimed approximately 210 hours of fraudulent overtime, totaling approximately $52,815 in fraudulent earnings. From January 2 to August 18, 2022, Smith claimed approximately 52 instances of overtime for assisting BPD with investigations, totaling approximately 249 hours of overtime and approximately $12,458 in overtime earnings. On approximately 11 occasions, the time and date stamps of relevant email communications between BPD and Smith show that Smith received the requests from BPD during his regular shift and that he also provided the requested information before his regular shift ended. Smith's historical cell site data routinely showed that he was not in area where he was scheduled to be working overtime. Again, often he was at his residence in Baltimore County and/or doing recreational activities such as being on his boat in the Baltimore Inner Harbor area. For some of the dates in 2022 when Smith fraudulently claimed to work overtime, he was on vacation. Those vacation locations included Las Vegas, Nevada, the Caribbean, and Florida.

**Tax Charges**

Smith also submitted Forms W-4 to his employer, the Baltimore City Public Schools Police Force, falsely claiming exempt status while failing to file tax returns. As a result, Smith's employer abstained from withholding payroll taxes while Smith's income remained unreported. He submitted fraudulent W-4's to his employer claiming exempt status, which were dated 6/1/16, 7/1/19, 3/10/20, and 6/1/22. (W3-1, W3-2). He also submitted Forms MW507, Employee's Maryland Withholding Exemption Certificates, dated 6/13/16, 3/10/20, 4/20/21, and 4/1/22. (W3-1, W3-2). As a result, his employer withheld no federal income taxes from his wages in 2017, 2019, and 2020. (W1-8, W1-10, W1-11).

Meanwhile, Smith failed to file his individual income tax returns for 2017, 2019, and 2020, and they remain unfiled. (W1-2, W1-4, W1-5). Because Smith's employer never withheld and paid over his federal income taxes due to Smith's false Forms W-4, and because Smith never filed tax returns to report income and subsequently pay his individual income taxes, Smith evaded taxes for 2017, 2019, and 2020.

SO STIPULATED:

Adeyemi Adenrele
Jared M. Beim
Assistant United States Attorneys

_____
Lawrence Smith
Defendant

_____
David Walsh-Little
Counsel for Defendant